May it please the Court, Anton Matlitsky for Planned Parenthood Federation of America. I'd like to reserve five minutes. This appeal turns on Relator's Respondiat Superior's theory that PPFA violated the False Claims Act and its state amendment. No, this appeal turns on whether. You can even assert, you can even be in this Court on this interlocutory appeal. That's a big, big issue in this Court, and you'd be wise to really direct a lot of attention to that. Sure, Your Honor. So I think in the Troyes case, there were several Troyes cases, but the one from 2016, this Court held that a denial of attorney immunity is an immediately appealable collateral order. There's more to a collateral order than just that aspect. For example, the claim is that we'll call your PPFA's lawyers L and L, L and L, quote, and other PPFA employees. So we've got a case that's been set for trial, now delayed once again. We've got a district court denying your motions for summary judgment on various claims, and now we're here on this fragmented sub-issue, which it's not just a claim against the attorneys hired by PPFA that were attorneys for these other affiliated state laws, but other PPFA employees. Right, so . . . It is so, in a sense, procedurally disruptive to this, and don't interrupt me, to this entire case that there's a real question of whether we can even hear this appeal. Well, so Your Honor, so in Barron's against Pelletier, which we cited in the motion to which is when you have a denial of some claims that are subject to collateral order appeal and some that are not, the question was whether the collateral order appeal could be held, even though there are other claims that would have to be tried anyway. And the Supreme Court held that the answer to that question is yes. So the only portion of the relator's claim that we are challenging in this appeal is the portion of the claim set out in their summary judgment brief from pages 64 to 76, which is 10.324 to 10.336 of the record. And the argument in that case begins with a description of the litigation in the law department and then gives five reasons for why litigation in law departments' representation of the affiliate defendants in, principally in the litigation, the injunction litigation in Louisiana and Texas district courts caused the making of false claims and the like. That's their argument against PPFA. They go through five reasons. The first one begins with PPFA's L&L attorneys provided legal counsel, I'm just quoting from their brief, to the affiliate defendants. And after the affiliate defendants received termination letters, the litigation and law department attorneys, they say, steered affiliate defendants away from exercising their administrative appeal rights and filed unsuccessful lawsuits, they say, in Texas and Louisiana. That's just straight attorney representation that falls within attorney immunity. The second thing they say is that PPFA's L&L attorneys assisted the affiliate defendants in crafting a letter to an administrative agency, again, falls squarely within attorney immunity. The third is that L&L attorneys assisted the affiliate defendants in filing a lawsuit in Travis County, again, obviously, that falls within attorney immunity. Fourth, they say PPFA L&L attorneys also represented PPGC in the Louisiana Federal District Court and they say fought the dissolution of the injunction after this court's decision in Kaufman. Again, that's just legal representation of clients. And fifth, they say, the litigation law attorneys continue in this case, in this False Claims Act, to represent the affiliate defendants. That is their claim based on legal representation. They have a different theory for PPFA's direct liability that they start talking about in their brief after that. But all that's on appeal in this case is that portion of it. And just to be clear, you said that— If a corporation provides a mechanic to fix an automobile, then if a corporation provides a lawyer to assist an affiliate, for want of a better term, they're not getting into what was the attorney-client communications. No, the— Sorry, Your Honor. That's true. We're not— This isn't a privilege— I'm finished. Sorry. They're just saying this is the link between PPFA and these affiliate Planned Parenthood entities. Again, it's just a question of how far do we stretch or allow these intermediate interlocutory appeals. Go on with your argument. Well, so I guess the question is really whether the conduct that's being alleged against my client falls within attorney immunity. We're not talking about attorney-client privilege or anything like that. That's precisely the point. Yeah. That's what needs to be decided in a trial court, not on an interlocutory appeal. But again, that's my concern. Well, counsel, we've spent a lot of time on that. Properly so. Judge Barksdale's question is before the whole court. Why don't you turn, though, to the merits of the decision that was made? Sure. So the district court gave two reasons for denying the claim of attorney immunity as to the conduct that I just described. The first one is that the litigation and the law attorneys were not being sued personally, that PPFA was being sued under a respondeat superior theory. And the second was that the scope of the statute or statutes, although they all read the same way, overcomes the immunity because it applies to any person who causes the making of a false claim and doesn't distinguish between lawyers and non-lawyers, essentially. So I think the answer to that first point, the fact that litigation and the law department lawyers were not being sued personally, is that, first of all, the doctrinal answer is that under respondeat superior theory, the defendant is allowed to invoke all the defenses and immunities that the primary actor is allowed to invoke. That's the like immunity doctrine that's been understood for more than 100 years by the Supreme Court and in Texas and in Louisiana. And that's the straight doctrinal argument. The policy argument, of course, the reason attorney immunity exists, as Your Honor explained in your choice opinion, is to ensure that advocates could zealously, or lawyers could zealously advocate for their clients. And these- The only actions of lawyers, I interrupted you, excuse me, but redirecting just a bit. The only actions of lawyers involved here is their decisions and their actions during litigation. Is that correct? That's right. So all things lawyers can do, parade of horribles, perhaps displace a lawyer doing something and is protected. So it's litigation decisions. You have, it seems to me, also have to show us that there would be this kind of immunity even for the lawyers under the False Claims Act as opposed to other claims here. So what is there in the common law that would convince us that there would be such an immunity? Right. So there are three separate claims. There's a claims under the False Claims Act, under the Texas analog, and under the Louisiana analog. It doesn't mean the False Claims Act is the most open as to what the immunity might be. That's right. And I think the reason that's so is because there are really no common law causes of action in federal, under federal law. And so attorney immunity doesn't arise that often. It arises very often in state court. And as Your Honor held in the Troy's case, the immunities are incorporated into federal, into statutes as well, so long as the statute doesn't overcome them expressly. So in that case, it was the Texas Securities Act. There is no case, as far as I know, ever under the False Claims Act that alleged that an attorney violated the False Claims Act by representing their client, which is, of course, an argument in our favor. So you have to look at the basic structure of the common law historically to determine whether this is one of those kinds of common law defenses that would have been incorporated into the statute, absent some language to the contrary, which doesn't exist. That's just like Section 1983, for example. Qualified immunity, absolute immunity, and the like, the reason those immunities apply in 1983 cases, even though 1983 doesn't say anything about immunities at all, is because those defenses existed in common law. And the attorney immunity defense is an ancient defense. I mean, we cite Blackstone, the King's Bench, the Supreme Court's decision in Briscoe, which was a 1983 case from the 1980s, discussed this kind of immunity that it held applies to both governmental and nongovernmental actors that participate in the judicial process. And a bunch of state courts that we cite have expressly adopted this kind of immunity as stemming from the Briscoe-like cases, including in Section 1983 cases, so federal cases brought in state court. So our argument under the False Claims Act, basically, is that this immunity, it's an ancient immunity that always existed in common law, and there's no reason to believe that Congress wouldn't have intended to adopt it. Now, there is an alternative. What is the immunity? What are you asserting is the basis for the immunity? Communications between the L&L lawyers and the affiliates? No, so this is not an attorney-client privilege case. What are you claiming is the immunity, then? So the immunity, the way it's defined, for example, in Texas, is that an attorney cannot be subject to suit for conduct in the course of representation of their clients. And it's the same thing in Louisiana, and we're asserting, so under those claims, Louisiana and Texas, we're asserting that we should win under that existing precedent. But they're not suing the L&L lawyers. They're suing PPFA or, you know, PPFA. Right. I was . . . PPFA sent its people down to work with these affiliates, and these affiliates took certain action. Nobody's asking, what was the conversation between the lawyer and the affiliate? They're just saying that they're part and parcel of what the affiliates did to . . . It's just not the typical immunity claim. So, Your Honor, with respect, I think it is the typical immunity claim. If this were a law firm instead of PPFA, it would just . . . seems to me it would be totally obvious. The law firm would be independent. Your law firm does not work for someone else. L&L works for PPFA. Well, L&L is housed within PPFA, but it's undisputed in this case that the affiliates are independent entities. They dropped any kind of veil-piercing claim or anything like that, and they are the ones. You say the affiliates. Are you talking about L&L? No. I'm saying . . . I'm talking . . . Are the lawyers in L&L employees of PPFA? Are they paid by PPFA? Do they work for PPFA? Do they have their retirement plans with PPFA? Whatever. Yes, but the PPFA was not the party in the injunction litigation. That's understandable, but the parties in the injunction litigation, the affiliates, as we'll call them, they didn't have their own lawyers working with them vis-à-vis PPFA. It's just a different type of animal we're dealing with here. So I guess, Your Honor, I would just say that, for example, when this case was argued . . . when the Kaufman case that we're talking about, the injunction case, was argued on bonk in this court, the lawyer who stood up and argued on behalf of the affiliate defendants was a lawyer from the litigation and law department. If you look at the brief, it says her name, and below it, it says Planned Parenthood, just like it could have said O'Melveny & Myers. That is what they are saying is the False Claims Act violation, that representation. And so, to answer your question . . . to get back to your question, Judge Southwick, I think we have to show you it's true under the federal False Claims Act that there is such a common law immunity, and I think we've done that just based on the history. And as far as I know, every state recognizes it. It would be totally anomalous if the federal courts didn't. But there's an alternative argument, which is that the statute doesn't reach this conduct in the first place under a sort of Norah Pennington principle, that broad statutes should not be read to incorporate petitioning conduct like the prosecution of lawsuits. And . . . Didn't we reach that decision? Yeah, so I think that the court has pendant jurisdiction to reach that because the district court imported that concept of the scope of the statute into his immunity ruling. So when the district court ruled on the immunity question, the second reason he said the immunity was overcome is because the scope of the statute reaches this conduct and thus overcomes the immunity. And our first answer to that is, immunities are generally incorporated into statutes, but our second answer to that is, the statute doesn't reach that conduct in the first place. And because that's inextricably intertwined, that argument is inextricably intertwined with the immunity argument, the collateral order, the way the district court resolved it, the court has pendant jurisdiction and it never needs to reach the immunity question in the first place. Right? Once it decides it has jurisdiction over the pendant claim, it can just decide the pendant claim and there are cases I can cite. All right, counsel. You saved some time for rebuttal. Thank you very much. May it please the Court, Heather Hacker for the appellee. Even if PPFA could assert attorney immunity as a legal matter, the district court's ruling should stand because PPFA failed to meet its burden below to show that it was entitled to judgment as a matter of law. PPFA failed to . . . I'm not addressing the motion to dismiss first, whether or not we're even going to hear this . . . allow this appeal. Yes, Your Honor. The main reason why the court should not consider this appeal is because the defense here is insubstantial. What PPFA is asking for here is essentially a pretrial advisory opinion because if you look at what they are . . . the order they're trying to ask the court to give, they're asking the court to, quote, reverse the summary judgment order to the degree it denied summary judgment as to conduct predicated on L&L's legal advice and representation. There are multiple reasons why this court cannot do that, but the biggest one is that there are other theories of liability here that will require PPFA to go to trial, regardless of how this court deals with this issue. There's one theory of liability that has absolutely nothing to do with lawyers. The second one is that if . . . even if . . . Do you have an example of that? Yes, Your Honor. That would be the argument that because PPFA controls the business operations of the affiliates, they are liable under precedent that we cite in our brief for causing the false claims to be submitted, or at minimum, under the conspiracy theories that they were involved in the wrongful conduct. That doesn't have anything to do with attorneys. So are you denying the right or are you somehow calling on our discretion? Is it because this immunity is an issue, regardless of whether we recognize it or not, would not end the lawsuit? Are you saying that there is no authority to use the collateral order doctrine? And if so, what are you relying on for that point? Yes, Your Honor. I think that for . . . the way that this court has looked at collateral order jurisdiction before, it looks at whether the defense is substantial enough to justify the disruption of the proceedings. And because this . . . Just to make sure I understand what you're saying, substantial could mean substantial legally, that there's not much merit to the argument that this immunity exists, or substantial in the sense that I think I was hearing you say it has such a small role in the overall claims that it's not substantial in that sense. So how do you mean it? That it's a frivolous argument or that it's a narrow argument? I think it could be both, Your Honor, because I think if you look at here, you know, where we would go from here, say the court does enter the order that PPFA wants. How would that change what we do at trial? Well, all of the same evidence that we're talking about here about PPFA, non-attorney employees at PPFA controlling what L&L did and controlling then what the affiliates did with regard to continuing to file false claims after termination, those . . . that theory, it doesn't matter whether or not there was attorney conduct involved in that. If it's being directed by the corporation and the attorneys work for the corporation, they're acting as employees, not attorneys and furthering . . . It might be the attorneys if you were allowed to get a judgment against those attorneys, which you wouldn't be allowed to do if they get immunity, would you? If the lawsuit was against the attorneys themselves, perhaps it would be different, but I think that when you're looking at what a . . . in order for this immunity to apply, setting aside the issue of whether a corporation can assert an attorney defense, if you look at whether or not it's within the scope of representation, that's what the test is, you have to show conclusively established that it was within the normal scope of representation as an attorney. Just because it's an attorney doing something that is related to the representation does not mean that that immunity applies. It has to be within the normal scope of representation. It is not within the normal scope of legal representation for an attorney to be serving two masters, to be acting as both an employee, a corporate employee, furthering its employer's  role. Well, Counselor, you're raising a point that certainly cuts across a lot of areas of activity beyond Planned Parenthood where you have national organizations with affiliates, and there's an awful lot of interaction between them, including probably on legal representation in some cases, so it's an important point. It does seem to me that on the collateral doctrine itself, regardless of what the answer is, if we have before us an issue of immunity, legal immunity, because of representation in litigation and not doing other things, not creating social media sites or whatever else they might be doing, but just on the litigation piece, it seems to me the question for us really is, is that an immunity like qualified immunity in which a direct appeal and collateral order appeal is allowed immediately regardless of what else is going on in the lawsuit, may not end the lawsuit against that defendant, but ends a claim? Is it more like that or is it something else? Why isn't this like qualified immunity in that you have a piece of the litigation that will go away if immunity is recognized? And Judge Kazmaier recognized it as a separate issue, though in a section of his opinion it deals with other things, but he made a specific ruling about this, sort of recognizing immunity as best as he could tell, but just says it doesn't apply to Planned Parenthood. So I think there was a question at the beginning there somewhere. Isn't that a legitimate reason to be here? It could be in a normal case, but this is not a normal case, and the reason why this is not a normal case is because the conduct at issue, whether it's purely attorney conduct or whether it's corporate employee conduct, that is a fact dispute that has to be resolved at trial, and this court does not have jurisdiction. What's the dispute I'm not quite following? Insofar as they were handling litigation, orchestrating the litigation may be a word that Relator uses in his briefing, it's litigation, it's lawyers handling the litigation. So are you talking about something beyond that, or that even that might not be covered by the immunity? Even that may not be covered by the immunity doctrine if the corporate employer of the attorneys was directing what the attorneys were doing. That's the fact dispute that we have here. The degree to which, to borrow the words from their prayer, the degree to which this conduct was purely attorney conduct, that is a fact dispute, and this court does not have jurisdiction on an interlocutory appeal from summary judgment order to resolve fact disputes or to revisit the sufficiency of evidence. We wouldn't be resolving a fact dispute. We'd just be determining that Planned Parenthood can't be liable for attorney conduct when attorneys are doing what attorneys do, advising clients. That's all we'd be doing. We'd be saying because of the attorney's immunity, Planned Parenthood can't be held liable because they enjoy life immunity. Isn't that all we'd be doing? That's what got you lawsuits. Well, I would say that the like immunity argument here was never raised below, so I don't think that the court even has jurisdiction to consider that, but regardless, I think if you were to issue that order, what effect would that have on the proceedings? All of this same evidence is going to be introduced at trial to show PPFA's involvement with the whole thing, and also, there's really no reason to address this right now because PPFA is asking you all to issue an order or to decide as a matter of first impression, or federal, Texas, and Louisiana law, that a corporation can assert attorney immunity on behalf of its attorney employees, and you may not even need to answer that question depending on what the trial record shows. If the trial record shows, as we think it will, and that's as evidence in the summary judgment record supports, that PPFA's corporate employees, non-attorneys, were directing the way that litigation and law was handling the litigation to further PPFA's own corporate interests, then the court doesn't even need to answer that question. So similarly to the Texas Supreme Court in the Landry's decision, there the court did not decide whether a legal organization that operated as a private law firm, whether attorney immunity would apply there because it said, well, this conduct is not even within the scope of representation. So if the trial record shows that this was not within the scope of representation, then the court has now answered all of these legal questions that it didn't need to answer because they would essentially not apply. The other reason that the court should not exercise . . . Why wouldn't litigation itself be within the scope of representation? If it's being directed, it wouldn't be within the scope of representation if the court is not serving only the interests of the client and it has some other . . . the attorneys have some other purpose in mind. So if the attorneys here were totally separate from PPFA, then there may not be a reason under this theory to hold PPFA liable, but that's not what the case is here. These lawyers work for PPFA, are involved in furthering PPFA's mission, and the evidence shows that they did things in the litigation for PPFA's benefits. That is not the normal scope of representation of a client. What the evidence shows in that regard? Yes, Your Honor. One major example, I think, is at the record at page 24, 718. There's an email that states that PPFA wanted to keep the litigation going. This is the affiliates litigation going to support its conversations with the Biden administration. There was also evidence that PPFA wanted the affiliates to get the grace period for its own PR benefits. It wanted to, quote, milk stories out of this for its own notoriety. At the record at page . . . that was at 24, 851. At page 20,000 of the record, PPFA wanted the brand to be protected, the federation brand to be protected, and wanted the affiliate defendants to, quote, protect each other by not challenging their own termination notice, even if that was in their obvious interest. That's a really good example here of where that attorney relationship broke down, because you had the affiliates that were saying, well, hey, we don't think that the state is right, that we are affiliates of each other, and they had other disputes with what the state did, but they did not challenge their own termination notices because PPFA thought it was in the best interest of the federation as a whole for them not to do that. If the attorneys are advising their clients in a way that is detrimental to their interest but furthers their corporate employer interest, that is not the typical attorney immunity situation. That kind of fact situation is exactly why we need to go back down to the district court and go to trial to hash out these factual disputes before the court goes into deciding these legal issues as a matter of first impression. Counsel, it seems to me that your argument actually is saying the attorneys themselves may not be immune because of these twin masters, and I don't think the district judge, and again, you're more familiar with his lengthy opinion than I am, basically accepted, maybe not completely, basically accepted the attorneys themselves had immunity. Isn't your argument going too far that in representing these affiliate defendants, they may have been guided by and even, you went so far as to say, controlled by some outside group for whom they actually are employed? I guess my question is, doesn't your argument mean the attorneys themselves may have lost their immunity? Perhaps, Your Honor, but the attorneys are not defendants here. I'm understanding though that the law is in play, and so I need to know what your argument does to the law. Right, yes. I think that it doesn't really change the law because it would be along the lines of, again, the Landrieu's decision where the court said, yes, this was an attorney giving a statement that was related to the lawsuit, that could be part of their representation, but it's not within the normal scope of representation of a client, and so that's what the court has to look at. In some cases, that may not be a fact dispute. It seems like you're really arguing that perhaps the attorney violated his or her oath, and I don't know if that's an issue that would lose immunity. It's an issue between the client and the lawyer. Anyway, I'm musing about this, you see. I'm struck by the boldness of your argument, but anyway, keep going. Well, it's really not that bold, Your Honor, when you consider the fact that . . . Boldness of the lawyer's losing immunity, not the rest of your argument. Right, Your Honor. I think that, you know, when you look at what the theories of liability are here, I just want to point the court to this again, because I think this is really important. So there are multiple reasons that PPFA is liable here. The first one, as I mentioned before, the control over the affiliates' businesses, that doesn't have anything to do with the lawyers. That is going to trial, regardless of this decision. Secondly, because PPFA, as I mentioned, was directing the affiliates' efforts to continue to get Medicaid funds, and L&L was one part of that overarching strategy from PPFA. Again, it's a fact dispute there, in terms of what the degree of their involvement was. But neither of those two theories of liability are diminished, even if PPFA can assert attorney immunity, because at most, attorney immunity would apply only to purely lawyer conduct within the scope of normal representation. And as of now, whether any of this lawyer conduct can even be parsed into this third category is disputed, and that must be resolved at trial. Now, going back to the court's question about jurisdiction and whether the court should exercise jurisdiction here, there's nothing stopping PPFA from raising this argument again at trial, after there's a full trial record. And getting the district court to rule on this, I mean, part of the problem with arguments being raised for the first time on appeal and all of that here is because when you raise an affirmative defense for the first time in your response brief, excuse me, it's not fully fleshed out. So the district court looked at what the argument was, which was they cited a bunch of cases for attorney liability and didn't connect the dots between attorney liability and corporate liability. The district court recognized that no case had ever held that a corporation could assert attorney immunity and said, okay, that's it. But PPFA had the burden here to establish that defense. They never connected those dots below. There's a fact dispute as to what the line is here between purely lawyer conduct and corporate conduct. That's why this case needs to go to trial and the parties need to be able to hash all this stuff out. PPFA can raise this defense again. This was just a denial of summary judgment, so they're not barred from raising this again. They can raise it again and then this court can look at the issue again if it needs to in the course of a normal appeal. There's no reason for this court to now decide these issues of first impression, these legal questions, weighty legal questions that are complicated on essentially a half-baked record that we don't have . . . that the district court held are factual disputes that need to go to the jury. Let me ask you, you've referred maybe more than once to waiver by the other side. What waiver arguments are you making that were not addressed by the district court because he did find justification for some of their late raising of issue? What issue did the district court not say . . . what issue did the district court not address that you're saying is a waiver? Well, the district court did not address this argument of like immunity or derivative immunity because PPFA never made that argument below. The district court also didn't address this issue of the factual dispute between the conduct that can just be purely lawyer conduct versus conduct directed by the corporation because it didn't get so far as to . . . it didn't get past the first question, right? There's two questions. I'm sure there's some things he didn't address, but I'm just talking about what you say they waived. Yes. Yes, Your Honor. So they waived that argument because they didn't make it below. The district court's ruling was just limited to the fact that it was not . . . they didn't connect those dots. So anything else that they've argued now here is waived for purposes of appeal. I was looking for specificity and now you're saying everything else. I'm sorry, Your Honor. Let me try that again with my remaining time, but . . . Forty-nine seconds. Why don't you give us . . . if you want to close this out. Yeah. So I guess just to go back to your question, I think that the biggest argument that they waived here was the connection between corporate liability and attorney liability. They never made that argument below. So all we have are a bunch of cases . . . They do talk about attorney liability, Your Honor, but the attorneys aren't being held liable here. The attorneys are not defendants. That's the missing link that they never established before. You're trying to get the PPFA through the attorney. PPFA is the defendant because of its own conduct here. Not the conduct of its attorneys. The conduct of its attorneys and their employee capacity, yes. There's my red light. We ask that the court either dismiss for jurisdiction or affirm. Thank you. Thank you, Your Honor. Just a few points. Just to start on jurisdiction and the argument that there are still other claims against PPFA that will still be tried. I 100% agree with that. I just urge the court to read the Barron's case, 516 U.S. 299 to 312. It just answers that question. On the question of scope . . . What was the immunity there? Excuse me? What was the collateral order of jurisdiction there? It was qualified immunity. On the question . . . Who authored Barron's? No, no, no. I'm talking about what year is that opinion? Oh, it was 1996. I was thinking Justice Scalia, 1996 is what I asked. Yes. So the case, it is qualified immunity. Supreme Court has never given a ruling like that on any other immunity, but it did say that as to qualified immunity. Well, it was a question not about qualified immunity, but about the collateral order doctrine. But you can imagine . . . Only in the qualified immunity context. In the qualified immunity context. But imagine, for example, the sovereign immunity context. We have a lot of cases that say it's immunity from suit and not immunity from a claim. And so you've got to deal with those. Anyway, once you . . . Well, no, that's right. I absolutely agree with that, but this court in the 2016 Troy's decision answered that question. That was the question before the court, and it was answered that it's an immunity, attorney immunity is an immunity from suit. So on the point of scope of representation, this whole two masters thing, just as a legal matter, we cite cases that they do not respond to Renfro in Texas, Montalvo in Louisiana, and the Ward case from the Supreme Court, all of which say that violations of a duty, such as the duty of loyalty to a client, are not subject to suit by an opponent or a third party. So that just answers that legally. As a factual matter, there's also undisputed testimony in the record from the affiliates themselves that they decided to go the route of this lawsuit, the injunction lawsuit, because they thought it was in their best interest. And so they've never answered that. This is summary judgment. It's undisputed testimony cited at pages 9 and 51 to 52. But aren't you saying that testimony, didn't you say first that testimony actually is irrelevant? It's totally irrelevant. It's totally legally irrelevant. And not just that, the whole idea that you are not allowed to have mission-driven litigation is, it seems to me, quite dangerous. We have cited a bunch of organizations in our brief, like Liberty Council, Catholic Charities, etc., etc., that do exactly that. They take on litigation that's consistent with their mission. So if their allegation is that there is some kind of conflict of interest because litigation and law department lawyers were furthering the mission of PPFA, well, the mission of PPFA and the affiliates, first of all, is the same. And second of all, mission-driven litigation is a totally normal thing that happens all the time with all kinds of organizations. There's a Supreme Court case called NAACP against Button from 1963 that held the NAACP had a First Amendment right to conduct that kind of litigation through lawyers. So we can't possibly vitiate attorney immunity to just argue that these lawyers are operating consistent with the mission of their mission-driven employer. It's sort of raising a number of difficult issues for us to resolve, but I wish you would, I know you don't have much time, disconnecting PPFA to the immunity of its lawyers. Right. Responding to Superior Law, to me, you've really said that as a respondent to a Superior Law issue. Yep. But there's no case that really does it in this kind of context. I think there is a case, the Landry's case, not in the Texas Supreme Court because the Texas Supreme Court said there was no immunity on the merits, so it didn't reach this case. But the intermediate Texas court held that there was immunity for... And the Supreme Court drops a footnote and says, we don't need to reach it. Yeah, they didn't need to reach it because the conduct itself wasn't within the scope of representation. But I just think, so there's the general respondee at Superior Rule, law firms can assert immunity for that reason. And then the basic policies behind the immunity, the reason the immunity exists is that attorneys shouldn't have to fear lawsuits for their representation when they're law... Lawyers aren't being, don't have to fear this litigation. They're not being, they're not suing the attorneys, they're suing the attorney's employer who sent them out, in a sense, figuratively to go do the work of the corporation, PPFA. Well, we dispute that. The attorneys were just working as... Continue to milk this. This is in our best interest. Again, summary judgment. That's why this, the argument can be made that this is so intertwined with the entire litigation that we don't have jurisdiction over an interlocutory appeal. That's the argument. That is... Time is up. Well, if you want to respond, to the extent that was a question, anything you want to say to that? Well, that is the argument. But I was just going to say that the reason that law firms have immunity is because their lawyers are going to be worried about their employer being sued. And it's absolutely the same thing here. Attorneys working for an organization like PPFA or Liberty Council or whoever else are certainly going to fear a lawsuit against their employer for tens of millions. Here, they make a totally implausible claim for $1.8 billion. Of course, an attorney is going to fear that kind of lawsuit. Attorneys need to worry about all sorts of things. Well, that's true, Your Honor. I agree with that. Thanks to you both. Thank you. Very helpful in presenting this case. That is the last case of today, of this sitting. We are adjourned.